PAETZ, Appellant, vs. McKAY and others, Defendants:
KENNEY, Respondent.

*January 9—February 6, 1934.*

For the appellant there was a brief by *Lowry, Beggs & Dawson* of Madison, and oral argument by *H. J. Lowry. John T. Kenney* of Madison, for the respondent.

Nelson, J.  The plaintiff contends that the court erred in holding that Kenney is entitled to a lien prior to the lien of the mortgage, for the reasons that the tax certificates were bid in at the tax sales by McKay, the owner of the premises and the mortgagor, and that Kenney as assignee of the tax certificates occupies no better position than McKay would occupy were he the holder of said certificates.

If the court had found that McKay had purchased the certificates and assigned them to Kenney the plaintiff's contention would be absolutely sound.  It is well settled that one who owes a legal or contractual duty to pay the taxes on land or redeem it from a tax sale cannot obtain a valid tax title to such land, and the purchase of a tax certificate by him operates as a payment of the tax.  *Smith v. Lewis,* 20 Wis. *350, 369; *Avery v. Judd,* 21 Wis. *262, 264; *Bassett v. Welch,* 22 Wis. *175, 169; *Edgerton v. Schneider,* 26 Wis. 385; *Fallass v. Pierce,* 30 Wis. 443; *Swift v. Agnes,* 33 Wis. 228; *Morgan v. Hammett,* 34 Wis. 512; *Bennett v. Keehn,* 57 Wis. 582, 15 N. W. 776; *Burchard v. Roberts,* 70 Wis. 111, 35 N. W. 286; *Jordan v. Estate of Warner,* 107 Wis. 539, 83 N. W. 946; *Hackett v. Van Dusen,* 132 Wis. 204, 111 N. W. 1097; *Olson v. McDonald,* 156 Wis. 438, 145 N. W. 1078.

It is also well established that a mortgagor cannot, by assigning a tax certificate purchased by him at a tax sale of the mortgaged property, make his assignee a *bona fide* purchaser who may claim the benefit of such sale as against the mortgagee.  19 Ruling Case Law, p. 396; *Eck v. Swennumson,* 73 Iowa, 423, 35 N. W. 503; *Kruger v. Supervisors of Wood County,* 44 Wis. 605; *Horn v. Garry,* 49 Wis. 464, 5 N. W. 897; *McLaughlin v. Darlington,* 6 Kan. App. 212, 50 Pac. 507.

While these propositions are undoubtedly well established, they do not fit the facts as found by the court.  The court found "that the defendant R. R. McKay did bid in the

lands described in the complaint herein at the tax sale on June 10, 1930, for the taxes assessed against said property for the year of 1929. That said sale is represented by tax certificate No. 3881, issued by the county treasurer for Dane county, Wisconsin, in the sum of $233.59. That said R. R. McKay entirely failed to pay for his said bid and was unable financially so to do. That thereafter said R. R. McKay informed said county treasurer of his inability to pay his said bid and consented that the tax certificate be issued to the defendant John T. Kenney upon payment for the same by the said John T. Kenney. That said John T. Kenney paid said county treasurer for said tax certificate the sum of $233.59 and the same was issued to him. That he has ever since been and now is the lawful owner and holder thereof."

The court made substantially the same finding with respect to the certificate issued in the year 1931.

There is an abundance of evidence in the record which supports the court's findings and tends to prove that prior to 1929 McKay was actively engaged in building houses for rent and for sale; that he was unable to pay his taxes for the years 1929 and 1930 and allowed them to go to tax sales in 1930 and 1931; that he attended the tax sales in those years and bid in the tax certificates against his several properties, including the property mortgaged to the plaintiff; that several months after each sale when the certificates were ready for delivery by the county treasurer, he was notified of that fact but was unable to pay for the numerous tax certificates which he had bid in at the sales; that the certificates were all made out in the name of McKay; that, not being able to pay for all of the certificates, he requested defendant Kenney to purchase certain of the certificates including the ones on the premises covered by the plaintiff's mortgage; that it is the custom of the county treasurer of Dane county, when certificates are not paid for

by a bidder, to resell them to any one who is interested in purchasing them and that ordinarily new certificates are made out; that it was understood between McKay, Kenney, and the county treasurer that it would not be necessary to reissue the certificates already made out in the name of McKay, and that if McKay would indorse the certificates the county treasurer. would then be in a position to sell and deliver them to Kenney; that this was done, although one of the certificates in question was inadvertently not indorsed; that some of the certificates affecting McKay's properties were paid for by him and some were indorsed by him but paid for by Kenney in both 1930 and 1931; that after McKay had indorsed such certificates as Kenney was willing to purchase they were handed back to the county treasurer, who in turn delivered them to Kenney, who paid for them, and that the county treasurer gave to Kenney receipts for the total amounts paid by him. Both McKay and Kenney denied that the transactions involved a loan by Kenney and McKay and denied that the certificates in Kenney's hands were held as collateral to any loan. Although McKay and Kenney were sufficiently friendly to permit McKay to request Kenney to help him out of the situations which confronted him, and although it appears that Kenney was willing to assist McKay, there is nothing in the record as we view it tending to show that in proceeding as they did McKay or Kenney acted in any fraudulent way. McKay knew that he might well expect considerate treatment from Kenney when he was able to redeem the certificates.

It is our opinion that the trial court, after having found the facts as recited in its findings, was clearly right in concluding that the two certificates owned and held by Kenney were liens prior to the plaintiff's mortgage.

*By the Court.*—That part of the judgment appealed from is affirmed.